IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY AARON THOMAS,   :  CIVIL ACTION
           :
     Plaintiff  :
           :
      v.    :
DR. ELDERMAN, et al.,   :
           :
     Defendants :  NO. 06-1281

**ORDER**

AND NOW this _____ day of _____, 2008, upon consideration of Defendants Maue, Hale, Knauer and DiGuglielmo's Motion for Summary Judgment and plaintiff's response thereto, if any, it is hereby ordered that said motion is granted. Judgment is entered in favor of defendants Maue, Hale, Knauer, and DiGuglielmo and against the plaintiff Gregory Thomas.

_____
           J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY AARON THOMAS,            :      CIVIL ACTION
                                 :
                Plaintiff        :
                                 :
           v.                    :
DR. ELDERMAN, et al.,            :
                                 :
                Defendants       :      NO. 06-1281

**DEFENDANTS MAUE, HALE, KNAUER, AND DIGUGLIELMO'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, defendants Dr. Fred R. Maue, Julie Knauer, Donna Hale and David DiGuglielmo, by their attorney, Randall J. Henzes, Deputy Attorney General hereby move this Court to enter judgment in their favor and against the plaintiff. In support of their motion, they rely on the attached memorandum of law with exhibits attached thereto.

Wherefore, defendants Maue, Knauer, Hale and DiGuglielmo respectfully request that judgment be entered in their favor and against the plaintiff.

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

BY:    s/RANDALL J. HENZES
       Randall J. Henzes
       Deputy Attorney General
       Identification No. 53256

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2136
Fax:       (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY AARON THOMAS,              :      CIVIL ACTION
                                   :
                Plaintiff          :
                                   :
           v.                      :
DR. ELDERMAN, et al.,              :
                                   :
                Defendants         :      NO. 06-1281

**MEMORANDUM OF LAW OF DEFENDANTS'IN SUPPORT OF
DEFENDANTS MAUE, HALE, KNAUER AND DIGIGULIELMO MOTION
FOR SUMMARY JUDGMENT**

## I. STATEMENT OF THE CASE

Plaintiff Gregory Thomas, an inmate at State Correctional
Institution at Graterford, filed this action by against defendants
Prison Health Services, Dr. Edelman, Dr. Fred R. Maue, Dr.
Germaine, Dr. Filipe Arias, Julie Knauer, Wendy Moyer[1], David
DiGuglielmo and Donna Hale. Thomas alleged that he was scheduled
to have surgery on his foot that was causing him pain in August
2003 but the surgery was cancelled by Edelman. He claims the
cancelling of his surgery violated his constitutional rights. He
seeks redress pursuant to 42 U.S.C. § 1983.

Defendants Maue, Hale, Knauer and DiGuglielmo now move for
summary judgment. In support of their motion, they rely on Thomas'
original complaint (Ex. 1); the deposition transcript of Gregory
Aaron Thomas (Ex. 2); the deposition transcript of Fred Maue, M.D.

---

[1] Moyer has been dismissed from the action. See Docket entry # 57.

(Ex. 3); the deposition transcript of Dr. Adam Edelman (Ex. 4) and this memorandum of law.

## II. STATEMENT OF THE FACTS

In 2002, Thomas developed a bone spur on his right foot that was causing him pain. Ex. 2, p. 104. Thomas was seen by Dr. Smith. Ex. 1, ¶ 41. Dr. Smith referred Thomas to Dr. Norman Stempler, an orthopedic surgeon. Id. ¶ 42. On December 19, 2002, Stempler saw Thomas. Id. ¶ 43.

On February 3, 2002, Thomas was taken to Mercy Suburban General Hospital and was examined by another doctor. Id. ¶ 44. The doctor ordered that Thomas receive physical therapy. Id.

On February 5, 2003, Thomas went to sick call. Id. ¶ 46. Thomas was seen by a physician assistant, who ordered Thomas a heating pad. Id. On that same date, Thomas was examined by Dr. Robinson. Id. ¶ 47.

On March 14, 2003, Thomas returned to sick call complaining of pain in his heel. Id. ¶ 48. Thomas was given anti-inflammatory medication. Id.

On March 19, 2003, Thomas went to sick call complaining of pain in his leg. Id. ¶ 49. Thomas was prescribed indomethalin. Id.

On May 18, 2003, Dr. Dennis Iaccarino examined Thomas. Id. ¶ 53. Dr. Iaccarino referred Thomas to an orthopedic surgeon. Id.

On June 16, 2003, Dr. Dennis McHugh examined Thomas. Id. ¶ 56. Dr. McHugh diagnosed Thomas with planar fasciitis. Id. ¶ 57.

2

McHugh informed Thomas that surgery was a possible course of treatment for his condition. Id.

On July 23, 2003, Thomas went to sick call complaining of a hip problem that he believed was caused by him limping on the bone-spur plagued foot. Id. ¶ 59.

On July 29, 2003, Thomas went to sick call with pain in his hip. Id. ¶ 61. Physician Assistant Dick Wells examined Thomas and placed him in the infirmary. Id.

On August 2, 2003, Thomas filed a grievance regarding his need for surgery. Id. ¶ 64.

On August 6, 2003, Thomas returned to sick call. Id. ¶ 65.

On August 19, 2003, Julia Knauer replied to Thomas' grievance. Id. ¶ 68. Knauer stated that his case has been reviewed by the medical director and according to utilization review, the recommended surgery is an elective procedure. Id. Knauer informed Thomas that she asked the medical director to review his case and write a consult for the next medical vendor's Utilization Review Department for its review. Id.

On August 21, 2003, Thomas appealed Knauer's decision to Superintendent DiGuglielmo. Id. ¶ 76.

On September 2, 2003, DiGuglielmo upheld Knauer's decision. Id. ¶ 71.

On September 8, 2003, Thomas went to sick call. Id. ¶ 73. At sick call, he was informed that Dr. Elderman would not approve the surgical consult. Id.

On September 10, 2003, Thomas returned to sick call and was examined by P.A. Wells. Id. ¶ 74. On that same date, Thomas submitted another grievance regarding the denial of his surgical consult. Id. ¶ 75.

On September 27, 2003, Dr. Germaine examined Thomas. Id. ¶ 76. Dr. Germaine informed Thomas that he did not need the operation. Id.

On September 30, 2003, Knauer responded to Thomas' grievance that he filed on September 10, 2002. Id. ¶ 78.

On October 2, 2003, Thomas went to sick call requesting surgery for his foot pain. Id. ¶ 79. He was informed that the surgery would not be scheduled. Id.

On this same day, Thomas received a memo from DiGuglielmo. Id. ¶ 80. In the memo, DiGuglielmo informed Thomas that he spoke with Dr. Iaccarino regarding Thomas' condition and that although Stempler and Madel recommended surgery, the course of treatment he is currently receiving is appropriate for his condition. Id. This treatment included flexion exercises, non-steroidal medicine, heel pads and a steroid injection for planar fasciitis. Id. DiGuglielmo informed Thomas that he cannot overrule medical decisions. Id.

On October 7, 2003 Thomas submitted another grievance requesting to have his surgery reinstated. Id. ¶ 83. On October 20, 2003, Thomas was examined by Dr. Kosierowski examined Thomas and informed Thomas that he did not need the surgery.

On October 24, 2003, Dr. Germaine informed Thomas that if he wanted to be considered for surgery, he would have to first undergo "conservative measures", also known as prescriptive steps. Id. ¶ 85. Thomas agreed to this course of treatment. Id.

On October 28, 2003, Thomas was given pain medication for his heel. Id. ¶ 86.

On October 29, 2003, Donna Hale responded to Thomas' October 7, 2003 grievance. Id. ¶ 87. Hale stated that, "Thomas was seen on October 24, 2003, for a heel injection which he agreed to take and it takes about three weeks to feel the full effects according to Dr. Germaine. Id.

On November 7, 2003, Dr. Germaine ordered gel cushions for Thomas to put in his shoes to relieve the pain in his heel. Id. ¶ 91.

On December 3, 2003, Thomas went to sick call complaining of pain in his heel. Id. ¶ 93. On December 12, 2003, Thomas again went to sick call with pain in his heel. Id. ¶ 94.

On December 23, 2003, Thomas went to sick call and was examined by P.A. Wells. Id. ¶ 96. Wells recommended that Thomas see Dr. Arias. Id.

On December 26, 2003, Dr. Arias examined Thomas. <u>Id</u>. ¶ 97. Dr. Arias informed Thomas that he needed to further review Thomas' file. <u>Id</u>. Thomas wanted Dr. Arias to write a consult for surgery. <u>Id</u>.

On January 2, 2004, Dr. Arias examined Thomas. <u>Id</u>. ¶ 98. Dr. Arias wrote a consult to have Thomas fitted for a special pair of shoes. <u>Id</u>.

On January 6, 2004, Thomas filed another grievance regarding Dr. Elderman's decision to cancel his surgery. <u>Id</u>. ¶ 103. On that same date, the consult for the special pair of shoes was approved. <u>Id</u> ¶ 101.

On January 1, 2004, Thomas was issued a pair of crutches to help him walk. <u>Id</u>. ¶ 102.

On February 3, 2003, Hale responded to Thomas' January 6, 2004 grievance regarding the denial of the surgery by Dr. Elderman. <u>Id</u>. ¶ 104.

On February 4, 2004, Dr. Germaine examined Thomas. <u>Id</u>. ¶ 105. Dr. Germaine ordered cephalexin. <u>Id</u>.

On February 4, 2004, Thomas sent a letter to the Secretary of the Department of Corrections, Jeffrey A. Beard, complaining about Dr. Elderman's decision regarding the surgery. Ex. 2, p. 66.

On February 7, 2004, P.A. Wells examined Thomas. Ex. 1, ¶ 107. Wells renewed Thomas' medications and referred him to Dr. Germaine. <u>Id</u>.

On February 13, 2004, Dr. Germaine ordered that Thomas' Achilles tender be x-rayed. Id. ¶ 108. On that same day, Dr. Sarnack made a cast of Thomas' feet in order to make him an orthopedic boot. Id. ¶ 109.

On February 27, 2004, Thomas received a letter with Maue's signature stamp on it in response to his letter to Secretary Beard. Id. ¶ 111. Maue did not sign the letter nor did he review it before it was sent to Thomas. Ex. 3, pp. 76-77.

On March 11, 2004, Thomas was seen by Dr. Arias and Dr. Germaine. Ex. 1. ¶ 113. A few days later, he was again seen by Dr. Arias and Dr. Germaine. Id. ¶ 114. On March 14, 2004, Thomas filed another grievance. Id. ¶ 115.

On March 20, Thomas was examined by Dr. Kosierwski. Id. ¶ 116. On March 30, 2004, Thomas had an ultrasound procedure performed on his right leg. Id. ¶ 117.

On April 2, 2004, Thomas received his orthopedic boot. Id. ¶ 119. Initially, Thomas had difficult using the boot. Id.

On April 6, 2004, Thomas went to sick call complaining that the boot were causing him to pull his groin and upper right thigh muscles. Id. ¶ 120. P.A. Wells examined Thomas and prescribed him pain medication. Id.

On April 8, 2004, Knauer responded to Thomas' grievance filed on March 14, 2004. Id. ¶ 122. On April 18, 2004, Thomas filed

another grievance, this time complaining that he had a hole in the back of his ankle. Id. ¶ 125.

On April 27, 2004, Dr. Germaine examined Thomas' ankle. Id. After examining the ankle, Dr. Germaine recommended that Thomas be seen by an orthopedic surgeon. Id.

On April 28, 2004, Knauer responded to Thomas' grievance. Id. ¶ 127.

On May 13, 2004, Thomas was examined by Dr. Iaccarino and Dr. Sharp. Id. ¶ 132. On May 21, 2004, Thomas was examined by Dr. Germaine and Dr Sharp. Id. ¶ 135.

On June 1, 2004, Dr. Arias ordered a MRI for Thomas' ankle. Id. ¶ 139. On June 9, 2004, the MRI was performed on Thomas ankle. Id. ¶ 140.

On July 15, 2004, Thomas was examined by Dr. McHugh. Id. ¶ 147. Dr. McHugh recommended surgery for Thomas. Id.

On August 1, 2004, Thomas was informed that he was going to receive the surgery. Id. ¶ 151. On August 16, 2004, Thomas had the surgery which was performed by Dr. McHugh. Id.

## II. ARGUMENT

### A. STANDARD APPLICABLE FOR A MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper upon motion if, after a review of the evidentiary material in the record, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Celotex

8

v. Catrett, 47 U.S. 317, 323 (1986).  Rule 56(c) mandates the
entry of summary judgment against a non-moving party who fails to
make a showing sufficient to establish the existence of an element
essential to that party's case and on which that party will bear
the burden of proof at trial.

An issue is only "genuine" if there is sufficient evidence
from which a reasonable jury could find for the non-moving party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The
non-moving party must set forth specific facts showing a genuine
issue for trial.  Celotex, 477 U.S. at 323.  If the evidence of
the non-moving party is "merely colorable" or is "not
significantly probative", summary judgment should be granted.
Anderson, 477 U.S. at 255.  A non-moving party may not
successfully oppose a summary judgment motion by simply replacing
"conclusory allegations of the complaint . . . with conclusory
allegations of an affidavit."  Lujan v. National Wildlife
Federation, 497 U.S. 871 (1990).

**B.  THOMAS' CLAIM THAT THE DENIAL OF SURGERY IN SEPTEMBER
2003 VIOLATED HIS CONSTITUTIONAL RIGHT IS BARRED BY THE
STATUTE OF LIMITATIONS**

The statute of limitations on an action brought under 42
U.S.C. § 1983 is "generally the applicable state-law period for
personal injury torts".  City of Rancho Palos Verdes v. Abrams,
544 U.S. 113, 123 n.5 (2005) (citing Wilson v. Garcia, 471 U.S.

261 275 (1985. In Pennsylvania, statute of limitations on personal injury torts is two years. <u>See</u> 42 Pa.C.S.A. § 5524.

Thomas filed this action alleging that the failure to provide him surgery in September of 2003 violated his constitutional rights. The statute of limitations on this claim expired in September of 2005.  Thomas filed his complaint on March 1, 2006, five months after the statute of limitations on his claim had run. Thomas's claim is untimely and barred by the statute of limitations.

Thomas cannot escape this limitation period by arguing that the statute did not begin to run on his denial surgery claim until he suffered some other injury resulting from the decision not to provide the surgery. Thomas' complaint alleges that he should have heard the surgery in September of 2003 and he knew at that time the surgery was not going to be performed. The statute of limitations on this claim does not begin to run anew every time Thomas complained that he did not get his surgery as scheduled. Thomas' original complaint and his deposition testimony establish that he knew in September of 2003, that he was not going to have the surgery for his right foot. His action is untimely and judgment should be entered in favor of Maue, DiGuglielmo, Knauer and Hale and against Thomas.

10

Even if this Court should find that Thomas' action against Maue, DiGuglielmo and Knauer is not barred by the statute of limitations, his action against Hale is still time barred.

Thomas' original complaint identified Hale and her actions. See Ex, 1 ¶ 87 and ¶ 104. He did not name her as a defendant at that time. See Ex, 2 p. 132. Instead, two years after he filed his first complaint and over two and half years after the statute of limitations had run on his claim, he filed an amended complaint adding Hale as a defendant. Even assuming that the statute of limitations on his denial surgery claim began in August of 2004 against the original named defendants, his claim against Hale is barred by the statute of limitations unless he can relate it back to his original filling date of March 1, 2006 pursuant to Rule 15(c) of the Federal Rules of Civil procedure. Rule 15(c) is of no help to since when he filed his first complaint he was aware of Hale's involvement in this action and chose not to sue her at the time. See Garvin v. City of Philadelphia, 354 F.3d 215, 221-22 (3d Cir. 2003). (An amended complaint will not relate back if the plaintiff had been aware of the newly named parties when she filed her original complaint and simply chose not to sue them at that time). See also Lape v. Pennsylvania, 157 Fed.Appx. 491, 497 (3d Cir. 2005).  Accordingly, Thomas claim against Hale does not relate back to the original filing date of March 1, 2006.  Instead his filing date for his claim agains Hale is March 13, 20088.  See

Docket entry # 44. His claim against Hale is barred by the statute of limitations and Judgment should be entered in favor of Hale and against Thomas.

**C.  ALTERNATIVELY, DEFENDANTS MAUE, DIGUGLIELMO, KNAUER AND HALE DID NOT VIOLATE THOMAS' RIGHTS UNDER THE  EIGHTH AMENDMENT**

Thomas claims that while he was incarcerated at SCI-Graterford, he received inadequate medical care for his right foot. He claims that he was scheduled to have surgery and Dr. Edelman cancelled the surgery for no valid medical reason. He believes that the surgery was necessary and should have been performed in September of 2003.  He claims a violation of his eighth amendment rights.

The Supreme Court has determined that failure to provide adequate treatment is a violation of the Eighth Amendment when it results from "deliberate indifference to a prisoner's serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 105 (1976). In order to state a claim that the medical care provided by defendants violated his constitutional rights, Bennett must prove that his medical needs were serious and that prison officials were deliberately indifferent to those needs. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's

attention." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 320 (3d Cir .2005) (citation omitted).

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The failure of a prison official to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor does not rise to level of deliberate indifference. <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d. Cir. 1993). The Third Circuit has stated that "[i]f a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d. Cir. 2004).  Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference. <u>Id</u>. <u>See</u> also <u>Rodriguez v. Smith</u>, 2005 WL 1484591, *5 (E.D.Pa. 2005).

Thomas was being seen and treated by medical professionals. The record clearly establishes this fact. Thomas filed multiple

grievances over the type of treatment he was receiving. DiGuglielmo, Maue, Hale and Knauer responded to those grievances . The Eight Amendment requires only them to review the complaint and verify with medical officials that Thomas was receiving treatment. See  James v. Pennsylvania Department of Corrections, 230 Fed Appx. 195, 198 (3d. Cir. 2007)(Once a prison grievance examiner becomes aware of potential mistreatment, the Eighth Amendment does not require him or her to do more than review the prisoner complaint and verify with medical officials that the prisoner was receiving treatment).  The record shows that they reviewed Thomas grievances and verified that he was receiving treatment. The Eighth Amendment does not require any more.

Thomas' issue is not that he received any treatment for his condition. Rather, he complains that he did not receive a specific type of treatment, surgery. He offers no evidence, including expert opinions, that the care he received was so inadequate to give rise to deliberate indifference on the part of the prison doctors. Additionally, he offers no evidence that Maue, Hale, Knauer or DiGuglielmo had a reason to believe or actual knowledge that prison doctors were mistreating him. Thomas simply disagreed with the course of treatment that he received, which is not a constitutional violation. See Monmouth County correctional Institutional Inmates v. Lanzaro, 834 F. 2d 326, 346 (3d. Cir.

14

1987). Accordingly, DiGuglielmo, Maue, Hale and Knauer are entitled to summary judgment.

### D. DEFENDANTS MAUE, DIGUGLIELMO, KNAUER AND HALE ARE ENTITLED TO QUALIFIED IMMUNITY.

State officials are immune from damage claims brought under 42 U.S.C. § 1983 if a reasonable official in his or her position could have believed that his or her actions or decisions were lawful in light of existing law and the information he or she possessed at the time. Anderson v. Creighton, 483 U.S. 635, 639 (1987). They are immune unless a reasonable official would have believed that his or her actions violated clearly established law. Id. This qualified immunity serves the social interest of protecting public servants from the time and expense of litigation and the threat of personal monetary liability, which divert officials' energies from the public's business and inhibit them in the discharge of their duties. Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982).

The Court must evaluate both the facts known to defendants and the law at the time defendants acted. Anderson, 483 U.S. at 641. An official does not lose his immunity unless the law existing at the time clearly and obviously proscribed the action that he took. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. Qualified immunity protects "all but the plainly incompetent or those who

knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  An officer loses immunity only if "it is obvious that no reasonably competent officer would have [taken the action in question]." <u>Id</u>.  Officials are immune unless "the law clearly proscribed the actions" that they took.  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 523 (1985).

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court held that claims of qualified immunity are to be evaluated using a two-step process.  First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation.  <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002).  If the plaintiff fails to make out a constitutional violation, based upon the facts taken in the light most favorable to the plaintiff, the qualified immunity inquiry ends. The officer is entitled to immunity.  <u>Id</u>.

If it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim then move to the second step of the analysis to determine whether the constitutional right was clearly established.  <u>Id</u>. That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited? <u>Id</u>.  The focus in this step is solely upon the law. <u>Id</u>.  If it would not have been clear to a reasonable officer what

the law required under the facts alleged, he is entitled to qualified immunity.  Id.

DiGuglielmo, Maue, Knauer and Hale could have reasonably believed at the time they acted that their actions conformed to currently existing constitutional law.  At the time they acted, the existing Third Circuit law regarding their conduct was Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). In Durmer, the Third Circuit held that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in cable hands and cannot be held liable under the Eighth Amendment[2]. Based upon the law at the time they acted, DiGuglielmo, Maue, Knauer and Hale could have reasonably believed that they were not violating Thomas' constitutional rights by deferring to the medical professional regarding the course of treatment for Thomas's condition despite Thomas' many grievances regarding that treatment. Reasonable corrections officials with the facts they possessed could reasonable believe that actions were lawful. Therefore, they are entitled to qualified immunity on Thomas' constitutional claims.

---

[2] On June 18, 2004, the Third Circuit decided Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thomas' allegations against Maue, Knauer, Hale and DiGuglielmo's occurred prior to June 18, 2004.

## IV. CONCLUSION

Based upon the foregoing, Defendants DiGuglielmo, Maue, Hale and Knauer respectfully request that their motion be granted.

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

BY:   s/Randall J. Henzes
Randall J. Henzes
Deputy Attorney General
Identification No. 53256

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2136

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY AARON THOMAS,           :       CIVIL ACTION
                                :
                Plaintiff       :
                                :
            v.                  :
DR. ELDERMAN, et al.,           :
                                :
                Defendants      :       NO. 06-1281

**CERTIFICATE OF SERVICE**

I, Randall J. Henzes, Deputy Attorney General, hereby

certify that on October 29, 2008, Defendants Maue, Knauer, Hale

and DiGuglielmo's Motion for Summary Judgment was filed

electronically and is available for viewing and downloading from

the ECF system. I further certify that a true and correct copy

of said document was served on October 29, 2008 by electronic

to:

   asg@gbrlaw.com


   berkleyb@pepperlaw.com


                        THOMAS W. CORBETT
                        ATTORNEY GENERAL

                BY:   s/Randall J. Henzes
                      Randall J. Henzes
                      Deputy Attorney General
                      Identification No. 53256