IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY AARON THOMAS : CIVIL ACTION
:
v. :
: No. 06-1281
DR. ELDERMAN, et al. :

**MEMORANDUM**

Ludwig, J. March 17 , 2010

This is a prisoner civil rights case, 42 U.S.C. §1983; jurisdiction is federal question, 28 U.S.C. §1331. According to the complaint, defendants violated plaintiff's Eighth Amendment rights by refusing to schedule recommended foot surgery SCI - Graterford where he is incarcerated.[1] Following discovery, the Commonwealth and the medical defendants separately moved for summary judgment. By order dated July 29, 2009, both motions were denied because of the existence of genuine issues of material fact.

Commonwealth defendants now move for reconsideration. They maintain that plaintiff cannot prove an Eighth Amendment claim against them based on inadequate medical attention because he was under the care of the prison's medical staff, whose determinations are entitled to deference. They also assert entitlement to qualified immunity and point out that an explanation is required of the denial of summary judgment on qualified immunity grounds. Forbes v. Township of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002) ("future dispositions of a motion in which a party pleads qualified immunity [shall] include, at a

---

[1] Defendants are Dr. Fred R. Maue, Julie Knauer, Donna Hale, and David DiGuglielmo ("Commonwealth defendants") and Dr. Edelman, Dr. Arias, Dr. Germaine and Prison Health Services, Inc. ("medical defendants").

minimum, an identification of relevant factual issues and an analysis of the law that justifies the ruling with respect to those issues.").

The summary judgment record[2] showed the following. Plaintiff has a bone spur on his right heel. He began treatment for this condition in 2001 while incarcerated at SCI-Graterford. In October, 2002, after conservative treatment had failed to alleviate his pain, Dr. Norman Stempler[3] recommended surgery - a plantar fasciotomy and spur excision. Exhibit "A" to plaintiff's memorandum. Unsuccessful conservative treatment was continued for several more months. In June 2003, after Dr. Iaccarino[4] explained the surgical procedure to him, plaintiff consented to it.. Exhibit "G." In July 2003, plaintiff was admitted to the infirmary to await surgery. Exhibit "H." An x-ray of his right hip followed, Exhibit "I," and certain medications were discontinued in anticipation of the surgery, Exhibit "J." However, on July 31, 2003, plaintiff was returned to his regular cell, his medications were resumed, and his surgery was canceled.[5] Exhibit "K."

For the next several months, from September 2003 through at least May 2004, plaintiff again received conservative treatment for the bone spur - steroid injections,

---

[2] The summary judgment record included the pleadings, deposition testimony, and documents produced in discovery, including plaintiff's medical records and his grievance file.

[3] Dr. Stempler is an orthopedic surgeon employed by Wexford Health Sources, Inc., the medical provider for the prison system at that time. Complaint, ¶ 42. He is not a party in this action.

[4] Dr. Iaccarino was also employed by Wexford. He is not a party in this action.

[5] Plaintiff notes that in July 2003, defendant Prison Health Services, Inc. became the medical provider for the prison system, replacing Wexford. Plaintiff's memorandum, at 4.

2

orthotics, physical therapy and pain medication. Exhibits "O," "P," and "Q." These treatments had failed in the past, leading to the recommendation of surgery. During this period, plaintiff filed six grievances complaining the treatment was not helping, charging that his surgery had been canceled as a cost-cutting measure, and requesting that the surgery be rescheduled. Exhibits "L," "R," "S," "T," "U," and "V." Each of the grievances was denied.

Defendant Donna Hale, then a Health Care Administrator and Medical Grievance Officer at SCI-Graterford, denied three of the grievances that contended Dr. Edelman, then a supervising physician employed by Prison Health Services, Inc., had refused the surgery. She did not discuss the matter with Dr. Edelman. Hale N.T. at 217-18, Exhibit "B" to plaintiff's memorandum. She reviewed the medical file, which explicitly states that conservative measures had not alleviated plaintiff's pain and that bone spur surgery was necessary. Exhibits "OO," "JJ," and "KK." Defendant Julie Knauer, then a Health Care Administrator and Medical Grievance Officer at SCI-Graterford, reviewed two grievances. She denied them without meeting with plaintiff or consulting medical personnel. She admitted that surgery had been recommended for plaintiff. Knauer N.T., 76-77 and 139; Exhibits "MM" (noting that "a specialist" had recommended the surgery), and "HH."

Plaintiff appealed the denial of his grievances. Defendant DiGuglielmo, then Superintendent at SCI-Graterford, was responsible for review of plaintiff's grievance appeals. DiGuglielmo N.T., at 92, Exhibit "Y" to plaintiff's memorandum. DiGuglielmo did not recall discussing with anyone plaintiff's claim that cost concerns were the reason for the denial of his surgery. DiGuglielmo N.T., at 19, 189, 191. Moreover, he did not review

3

plaintiff's medical records to confirm plaintiff's claim that prior conservative treatment was ineffective. Id. at 103.

Plaintiff also sent a letter to Jeffery Beard, then Secretary of the Department of Corrections, stating that cost concerns were the reason for the refusal of his surgery. Exhibit "W." This letter was forwarded to Dr. Maue, Chief of Clinical Services for the Department of Corrections, who responded to plaintiff that he had been fitted for an orthotic and should direct further concerns to Ms. Knauer. Exhibit "AA." Plaintiff did not receive the recommended surgery.

In order to establish a violation of a prisoner's constitutional right to adequate medical care, the "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as requiring treatment. . . ." Small v. Gillis, 2006 WL 1737501, at *3 (E.D. Pa., June 22, 2006), quoting Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Here, plaintiff was diagnosed with a bone spur. He was treated conservatively for months before surgery was prescribed to correct the condition. This is a "serious medical need" for Eighth Amendment purposes.

As to deliberate indifference - it "can be found where prison officials 'ignored . . . evidence' of a serious need for medical care or where 'necessary medical treatment is delayed for non-medical reasons.'" Small, supra, at *3, quoting Natale, 318 F.3d at 582.

4

Plaintiff in this case filed six grievances and sent a letter to the Secretary of the Department of Corrections setting forth that the surgery was withheld because of the expense. The Commonwealth defendants were aware of plaintiff's claim as well as the contents of his medical files. This record is sufficient to create a triable issue as to whether these defendants acted with deliberate indifference to plaintiff's serious medical condition when his continued requests for surgery were rejected.

A qualified immunity analysis requires that the facts, "taken in the light most favorable to the party asserting the injury . . . show the [official's] conduct violated a constitutional right," and that "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201 (2001).

The summary judgment record establishes a material issue of fact as to the existence of a constitutional violation. Commonwealth defendants' position is that beginning in mid-2003, when the prescribed surgery was canceled, plaintiff was under the care of medical professionals and the Commonwealth defendants reasonably believed that they could defer to the decisions of those professionals, citing as new law Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)(allowing claim to proceed against non-medical prison officials by prisoner already receiving medical care). However, Spruill did not change the law requiring prison officials to assure that a prisoner's serious medical needs were being met. See Small, supra, at *5. That responsibility was announced in Estelle v. Gamble, 429 U.S. 97, 104-05 (1996), and since that time - more than seven years before the events giving rise to this action - that responsibility has been clearly established as a non-delegable duty. In these circumstances,

5

Commonwealth defendants are not entitled to qualified immunity.

Accordingly, Commonwealth defendants' motion for reconsideration must be denied.

BY THE COURT:


 /s/ Edmund V. Ludwig 
Edmund V. Ludwig, J.